Minshall, J.
The exchange in this case was conducted on behalf of the defendant by his father acting as his agent. But this can make no difference as to the rights of the plaintiff, if the knowledge and acts of the agent were such that the plaintiff would be entitled to a rescission had the party acting as agent been the owner of the land, and acted for himself in effecting the exchange, instead of an agent. For in such case the agent personates the principal, and, as to third persons, his knowledge and acts must be regarded as those of the principal. Dunl. Paley Ag. 259, and eases cited in note 4. Any other rule would make it utterly unsafe to deal with one acting as the agent of another.
From the facts found by the court it appears that the defendant, being the owner of a tract of land in the state of Iowa, proposed by his agent to exchange it for the house and lot of the plaintiff in the town of Kenton. Both were well acquainted with the property of the plaintiff, but being uninformed as to the land in Iowa, the agent of the defendant procured a conveyance and, at his suggestion, he and the plaintiff went to see one Pugh, though a stranger to both of them, residing in the county where they did, the agent saying that he understood that Pugh was acquainted with the land. On arriving at Pugh’s he informed them that he had *434 seen the land, that he had been on it the year before, and that it was good, dry, tillable land near the county seat, that it was worth $10 an acre when he saw it, and would then be worth more. In a few days afterward, the agreement for the exchange was made and executed, by the plaintiff conveying his house and lot to the defendant who conveyed to the plaintiff his land in Iowa containing 80 acres, and also made and delivered to the plaintiff two notes amounting to $700, secured by mortgage on "the house and lot convoyed by the plaintiff, as the equivalent of the supposed difference in the value of the lands exchanged.' In a few months afterward the plaintiff discovered that the land in Iowa was not such as it had been described by Pugh; that it was unfit for cultivation, being wet and marshy, and worth not more than $3 an acre. ' The error arose from the fact that Pugh was mistaken in the ownership of the land he had seen; the land he had seen and described to the plaintiff and the agent of the defendant, was such as he had described it to be, but was not the land of the defendant, though he thought it was. The mistake was in the identity of the land seen and'described-by Pugh. Thereupon the plaintiff offered to rescind which was refused by the defendant. The refusal is placed, not upon the ground that he cannot be restored to his former condition by the plaintiff, but that upon the facts as found, there is no ground for rescission, there being, as claimed, no mutual mistake, and no fraud found by the court. Whilst no fraud is found by the court, does i't not however clearly, if not necessarily, follow from the circumstances under which the exchange was made, that there was a mutual mistake of the parties as to the character and value of the lands'in Iowa? We think it does. Both parties were in ignorance as to the true character of the land of the defendant. If it had been otherwise the cou.rt could not have found that there was no fraud. It found that the plaintiff believed and relied on the information given by Pugh, and if the defendant by his agent was acting in good faith, he must have done the same thing; for it will hardly be affirmed by any one that, under the circumstances of this ease, he could without fraud have concluded the exchange, knowing that the land was *435 not such as it had been described by Pugh, for he must have known, if he knew any thing, that the plaintiff believed what was said to him by the person to whom he had taken him for information. He knew it from the fact that the plaintiff concluded the agreement for an exchange on the basis of that information. So that under the circumstances, it would be perilous for the defendant to claim that neither he nor his agent believed the statements of Pugh as to the character of the Iowa land, for if that had been the fact, he could not have concluded the exchange on the basis of the information being true, without perpetrating a fraud on the plaintiff, whether he made any positive representations or not. Poll. Cont. (Wald’s Ed.) 429.
But his belief or disbelief as to this is not a matter of mere argument, for, while there is no specific finding on the question, it is made certain by the pleadings. In answering the averments of the petition the defendant affirms in his pleading that the description given of the land by Pugh was not untrue, and that there was no mistake in the identity of the land seen by him. Therefore, unless we may conclude that he had one belief as to the matter when he concluded the exchange and another when he filed his answer, a thing quite impossible if not absurd, we may safely conclude that as a fact apparent on the record, he had the same belief as to the accuracy of the statements made by Pugh that the plaintiff had. But the positive findings of the court are that Pugh was mistaken as to the identity of the land, and that that owned by the defendant was not of the description given by him. So that the only question that remains is, not whether there was a mutual mistake in regard to the land, but whether it is such a one as under the circumstances entitles the plaintiff to a rescission.
Here we must observe that the mistake arose not from a mistaken opinion of Pugh as to the character of the defendant’s lands; for if he had in fact seen the land and simply erred in his opinion as to its character and value, a different question might have been presented. It is a matter of common knowledge that opinions will differ in this regard, and the plaintiff in relying on the statements of Pugh as to the quality of the de *436 fendant’s land, might be held as assuming the possibility of a mistake in his judgment as to this. But Pugh did not see the land of the defendant; he was mistaken in its identity. Such errors are less frequent than the former; and a fault could hardly be imputed to any one in not anticipating an error of this kind. 2 Pom. Eq. § 852. It is against mistakes of this character that courts have been most prompt to relieve; and not only for the reason that they may happen where the greatest caution is observed, but, also, that as a matter of law, where they do occur, no real contract is formed. Thus in Wheadon v. Olds, 20 Wend. 174, a sale had been made of a quantity of oats in bulk, upon an estimate of the quantity, after a portion had been measured. The estimate of the quantity unmeasured was made by a comparison of the measured with the unmeasured pile, and the purchaser agreed to take them at the estimate, “ hit or miss ” as to quantity, and paid for them at the estimated quantity. The oats did not hold out within about 300 bushels of the quantity estimated and paid for. It was afterwards discovered that a mistake had been made in regard to the quantity measured, which formed the basis of the estimate, in counting the tallies as bushels, instead of half-bushels as they were in fact. Upon these facts the plaintiff was allowed to recover back the money paid for the entire quantity which he did not receive. The case was followed in Coon v. Smith, 29 N. Y. 392, where it was cited as showing “ the length courts will go in disregard of contracts founded in a mistake of material facts and in the protection of rights prejudiced thereby.” There an agreement between adjoining landowners by which a corner had been erroneously fixed by reason of a miscount of the chain-men, was held not to be binding, although it had been acted on by both parties before the mistake was discovered. The error of the chain-men being unknown to the parties invalidated the agreement fixing the corner.
So in Gardner v. Lane, 9 Allen 492, W. had agreed to sell G. 135 barrels of No. 1 mackerel. By mistake of the parties in making the delivery, some two months afterwards, part of the barrels marked to indicate delivery, were No. 3 mackerel *437 and part were salt. In replevin by tbe purchaser against a creditor of the seller who had levied on the property, it was held that no property passed in the barrels so marked by mistake, even as to those containing No. 3 mackerel, the court saying, “ They are not included within the contract of sale; the vendor has not agreed to sell nor the vendee to purchase them; the subject-matter of the contract has been mistaken, and neither party can be held to an execution of the contract to which he has not given his assent. It is a case where, through mutual misapprehension, the contract of sale is incomplete.” See, also, the same case, 12 Allen, 39, where the ruling, when it was again brought before the court, was adhered to.
The principle of these cases is quite as applicable to contracts for the sale and conveyance of land, induced by the mutual mistake of the parties, as to contracts concerning personalty ; and the equitable relief of rescission will be granted, where such mistakes have intervened, quite as readily in the on ease as in the other, if not more so. Poll. Cont. (Wald’s Ed.) 430, and cases cited in the notes; Pom. Eq., § 869; Crowe v. Lewin, 95 N. Y. 426; Lawrence v. Staigg, 8 R. I. 256; Gilroy v. Alis, 22 Iowa. 174; Iric kv. Fulton, 3 Gratt. 193; Barfield v. Price, 40 Cal. 535; Knapp v. Fowler, 30 Hun. 513; Rhode Island v. Massachusetts, 13 Pet. 23; and Mulvey v. King 39 Ohio St. 491, Upson, J., 495.
In the case presented by the record before us, the mistake was in the identity of the land that had been seen and described by Pugh. He supposed it to be the land about which the parties were contracting and desired information; the error was in this and not in the description of the land he had seen; hence the parties, in acting upon his information, acted upon the same error of fact; and, upon principle, the case is not different from what it would have been, had they gone to see the land described by Pugh, supposing it to be the land of the defendant; and that such an error would, on the ground of mutual mistake, have avoided the contract, is, we think, too plain to admit of a question.
In treating of the subject of mistake, Mr. Pollock in his work on contracts, observes: “ It may happen that there does *438 exist a common intention, which however is founded on an assumption made by both parties as to some matter of fact essential to the agreement. In this case the common intention must stand of fall with the assumption on which it is founded. If the assumption is wrong, the intention of the parties is from the outset incapable of taking effect. But for their common 'error it would never have been formed, and it is treated as non-existent. Here there is in some sense an agreement; but it is nullified in its inception by the nullity of the thing agreed upon. And it seems hardly too artificial to say that there is no real agreement. The result is the same as if the parties had made an agreement expressly conditional on the existence at the time of the supposed state of facts: which state of facts not existing, the agreement destroys itself.” Pol. Cont. 412; see, also, Fonbl. Eq. marg. 120; Kerr on Fraud and Mistake, 431.
The case of Crist v. Dice, 18 Ohio St. 536, on which much reliance is placed by counsel for defendant in error, is plainly distinguishable from this one. It was an action for rescission on the ground of fraud. The defendant claimed and introduced evidence, that, though he had exhibited to the plaintiff a letter from a stranger, representing the land as favorably situated and of good quality, and stated to the. plaintiff that he had bought the land on the strength of this description, he refused to vouch for its truth, and advised the plaintiff io go and see for himself. The plaintiff declined to take the trouble and agreed to make the exchange at his own risk. There was no finding of facts, and the case was disposed of on the assumption, that the court below may have believed the defendant’s version; and, adopting it, the plaintiff had of course no ground for relief. This sufficiently distinguishes the case from the one presented by this record.
We are unable to perceive upon what principle of justice the plaintiff should be denied the relief he asks. The information upon which he acted had not been obtained in a casual meeting with Mr. Pugh. The defendant by his agent having suggested that Pugh was acquainted with the land, and taken the plaintiff to inquire of him about it, is estopped from saying, *439 that Pugh was a stranger and he had no right to rely on what he said. Moreover, the error did not occur from any bad faith in Pugh, but from a mistake that may happen to the most careful of men. As the mistake arose from an innocent error in all the parties, natural justice forbids that- the loss of one arising out of it, should be the gain of the other.
Judgment reversed, and judgment rendered for the plaintiff in error, rescinding the exchange made by the parties.